THE ETOWAH, ETC., MINING COMPANY *vs.* PARKER, executor.

1. Deeds which designated no specified interest in lands, and which did not describe them so that they could be located, were void for uncertainty. In order to be available as color of title, it was necessary to show that they had some connection with the premises in dispute. None was shown in this case.
2. There is nothing in the evidence to found prescription upon, and the verdict could not have been otherwise than it was.

March 4, 1884.

Deeds. Title. Prescription. Before Judge ESTES. Gwinnett Superior Court. October Term, 1883.

Reported in the decision.

W. P. PRICE; R. H. BAKER, for plaintiff in error.

H. H. PERRY, for defendant.

HALL, Justice.

The lessors of the plaintiff exhibited on the trial a perfect claim of title from the state to themselves. The defendant company relied upon what it contended was color of title under which it claimed to have held adverse possession of the premises, to-wit, lot No. 387, 12th district,

and 1st section, Lumpkin county, for seven years previous to the commencement of the plaintiff's suit.

The first muniment of title introduced by it was a deed executed on the 6th day of March, 1860, by one Hezekiah Kelly to R. S. Denny and A. M. Eastman, to the entire mineral interest in said lot and the two adjoining lots, Nos. 384 and 388, a deed bearing date the 5th day of February, 1878, from Denny to D. E. Somes, whereby he conveyed to him an undivided half of all the mineral interest of these three lots.   Also a deed bearing the same date from Eastman to the same party conveying the other half of the mineral interest in said lots; and a deed from Somes to Silas L. Loomis, dated 6th February, 1863, for one undivided third of the mineral interest in said lots.  The defendant then offered in evidence two other deeds, each of which bore date April 15, 1868, one being made to it by Somes and the other by Loomis, and each conveying all the interest of the respective grantors in and to the mineral interest of lots numbers 384, 387 and 388.   These deeds were objected to, because they did not designate with certainty what was the interest purporting to be conveyed thereby, nor describe the lands so that they could be identified; the objection was sustained and the evidence rejected.

It was proved by a witness that lots 384, 387 and 388 were contiguous and formed one body of land; that there was a cabin on one of them in 1858; the witness uses the definite article as to the lot, but does not certainly state which it was, and probably referred to the entire body of land; but whichever it was, it was continuously occupied until 1863, when its occupancy seems to have been abandoned; that in 1868, a miner's cabin was built on 388 by the superintendent of the Etowah and Battle Branch Hydraulic Hose Mining Company, which has been since continuously occupied by the company or its tenants, except for short intervals, not exceeding six months at any one

time. Since that time, mining had been done every year on lot 388, but none on 387, the lot in dispute.

The plaintiff had a verdict, and the defendant moved for a new trial, which being refused, it prosecuted this writ of error. It is conceded that plaintiff in error never had actual possession of lot 387, never enclosed it, or got minerals from it, and made no use of it in its mining operations, though it claims to derive its title from Kelly. The only grounds of the motion were that the verdict was contrary to law and evidence, and that there was error in ruling out the above named deeds.

It needs no argument to show that deeds which designated no specified interest in the lands, and which did not describe them so that they could be located, were void for uncertainty. In order to be available as color of title, it was necessary to show that they had some connection with the premises in dipute; the defendant shows no possession under any deed from a party who had ever been in possession of this lot. Kelly, who conveyed to Denny and Eastman, had no possession of it, and it was not shown how or when, or from whom, he derived his title. Admitting that Jordan lived on it in 1858; that after he abandoned it, it was occupied by Rutherford and Adeline Beck until 1863, it is not shown that either of them occupied it as Kelly's tenants or by his permission, or that their possession was in any way subordinate to his claim, or that he derived his title from them. The present defendant shows no title from Kelly's feoffees to either this or the adjoining lots, and neither of these feoffees of his pretend to have had possession of either of them, of any character whatever. There is nothing in the evidence to found prescription upon, and the verdict could not have been other than it was. Code, §§2679, 2680, 2681, 2683, and citations under each.

Judgment affirmed.